Case number 245981, Jeffrey Howard v. Cherokee Health Systems. Argument not to exceed 15 minutes per side. Mr. Cowan, you may proceed. May it please the Court, my name is Mark Cowan. I represent Jeffrey Howard, the appellant. Is it too late to reduce my time for rebuttal to three minutes from five? Can I reserve three minutes? It's fine with me if it's fine with the clerk. I'm here today representing Jeffrey Howard. He was terminated and we filed a sex discrimination claim on his behalf. And Judge Kreitzer in the court below heavily based her decision on the case of Ames v. Ohio Department of Youth Services. I stated in my brief that CERT had been granted in that case, and actually it was a Sixth Circuit case, and Judge Kethledge sort of asked the Supreme Court to maybe take a look at this. They did. They granted CERT, and in a 9-0 decision, they overturned that. And so basically it puts people in Title VII cases on even ground, whether you're male, female, black, white. You don't have to have a heightened evidentiary stand. Didn't the district court also rely on alternative pretext grounds? Yes. And why isn't that an independent basis to affirm? That would be an independent basis to affirm if it were true. But what the court, what a plaintiff has to show at this point is, if you produce evidence from which a reasonable jury could doubt the employer's explanation, so you've moved basically from Step 1 and then them offering a rationale to Step 3 to rebut and show that it's pretext. So at Step 3, this court has said in Chen that if you produce evidence from which a reasonable jury could doubt the employer's explanation, this will support an inference of discrimination at trial. You don't have to prove anything at the summary judgment stage, but you do have to produce evidence of why it's pretext. So in a pretextual case, your evidence is often going to be circumstantial. We had that this guy was an employee, had no problems, and the whole time he was there as CFO. He had been there a long time at Cherokee and 26 years with no problems, had a spotless record. He was in charge of gross annual revenues over $60 million as their CFO. And Freeman's guy who fired my client Howard, he described Howard as his performance as stellar in his last annual evaluation and gave him a bonus plan. The firing was based on his decision to apply for the CEO position upon Freeman's replacement. So I don't know that his excellent services before that are all that relevant to disproving the claimed basis for the decision, which was the decision created. So what is the evidence that this was based on sex? There's three elements of that. The first one is that Howard himself said it was very rare for a male to be promoted. He said that in the brief I talk about where he said that the male members of the leadership team were not given a seat at the table in decision making. And third was Tracy Garner, who was the person that was paid for sexual harassment from Freeman. Cherokee had to pay her over $100,000. And she said if you were in that protected class of women there and a male crossed you, the male would be gotten rid of. She said that based on her years of experience dealing with Dr. Freeman. The final thing is when the board member Covington started investigating why this happened, why he was terminated, and Covington was trying to figure out what to do about the next CEO, he went to talk to Perinda Cotre, the one who was protected. He went to talk with her and Freeman threw a fit and said don't be talking to her. And he said a board of director member can't talk to the incoming CEO? So it was clear that he was trying to protect her from any kind of jeopardy of not getting that job. What's the evidence that that was based on her sex rather than the fact that she was his preferred replacement? That wouldn't be illegal. I mean it may be a bad business judgment to fire somebody just because they applied for a job. But that's not illegal. It has to be based on a protected class. I understand that. And no employer is going to come out and say I'm doing this because she's a woman. I'm going to hire her instead of you. Nobody is ever going to do that. So what do you have to prove? And Chen, under this court, you said if you present evidence that a reasonable jury could doubt the employer's explanation. And not only do we have that, that my client doubts it and that Tracy Garner doubts it, the board of director member himself, Covington, said he's not being forthcoming with me about this. He was not truthful with me about the reason he fired Howard. That's enough to get us to trial. Why isn't that because he didn't want to admit he fired him just because of applying for a CEO position? I mean it seems to me that there was some debate, and I agree with you that we have to take the facts in the light most favorable to you. Freeman apparently thought that your client had lied to him. And that was the basis because your client said he would not apply. Your client has a different understanding of that conversation. I agree with you that we have to go with your client's view at the summary judgment stage. But that still doesn't show me what is the evidence that if Patry had been a man that this firing would not have taken place? Well, we don't have to go that far. The Supreme Court in the concurring opinion in Ames said this asked court, if we apply McDonnell-Douglas, this asked the court to separate direct evidence from circumstantial evidence. We don't have to do that. They're both good evidence. They're both first-rate evidence. So all we can do is give the circumstantial evidence. We don't have to come forward with the direct evidence. That's not required of us, especially at summary judgment stage. But Chin says you don't have to do that at all. At trial, if you give the reasonable jury evidence that they could doubt the employer's explanation, they can give that inference of discrimination at trial. And usually that's all you're going to have. What else could a plaintiff do besides come forward with a director that says he's not being honest with why he fired him? I mean, what else can you do? You have to do something for the trier fact to conclude affirmatively that it was discrimination on the basis of sex, not that he just liked this candidate better. Well, we have more evidence than that. Tracy Garner said it wasn't just me. It was the protected group of women. And also Howard testified about him hiring basically attractive females for the positions that he hired for there. And on top of that, we have Jeffrey Howard's own testimony that says it was hard to get advanced there if you weren't female. So we've given the jury those three things they can look at and make the decision on that. If they don't believe it, fine, they can rule against him. But at summary judgment stage, all you have to do is raise the inference. And if you give the jury a reason to doubt that, that's all we have to do right now, and it's up to the jury at that point. And that's prong three that you were talking about. We can't come in with a tape recording of him saying I'm doing this because she's a woman. That will never happen. That will never happen. But if they lie about the reason and you catch them in that and present that evidence to the jury, they're allowed to say, you know, they're lying about that, it would have to be discrimination at that point. What do you do with the evidence that Freeman seemed to want a clinician as the CEO? That's what they talked about in the concurring opinion in Ames about being mixed motive. We don't have to show that it's the sole reason. We just have to show that it's one of the motivating factors. And what is the evidence again? Is it just it's your general evidence that there was a protected class of women? Yes. And you think that that would be enough to show that the reason he wanted her to be CEO was because she was a woman, for a reasonable jury to conclude that? That he preferred that. I mean, they had that in their handbook, that they're an affirmative action company. I'm sorry, they had what in the handbook? That they were an affirmative action company. First of all, I don't remember that being in your briefing. Is that in your briefing? And then secondly, I think Judge White's question is going to be, what does that mean? I mean, until recently, most companies did. I think the Supreme Court has said you can't do that now in Title VII, that everybody stands on the equal footing. Getting back to Judge Larson's question, did you brief that? Judge Larson's? I'm sorry. The question about the statement that you're making now that their employee handbook or something says they're an affirmative action company, I don't recall that in the materials you presented to us. You're correct. We requested any kind of procedures or manuals or policies that dealt with that, and that was not produced by the defendants. It just said in the handbook that basically if you want to see our affirmative action policy, you come see us. That was not produced. So you're saying it's not in the record? Correct. So we can't really rely on that? Okay. Okay. I understand that. So the evidence that there is sex discrimination going on here, just to be clear, the evidence from which you think a reasonable jury could infer that the reason that Ms. Cautry was preferred to be the CEO is that it was very rare for men to be promoted, but sometimes men got promoted, but it was very rare that there's some testimony that men were not given a seat at the table? Yes. And is there something else? Yeah, all that was in the brief and in the record, and the other thing was that Tracy Garner testified that there was the group of women that were protected by Freeman, and if a bail crossed them, he would have been gotten rid of. But was that all women or just women he particularly liked? The testimony came out that there were a few women that he did not like because they were overweight and he felt like they presented a bad image for a health company. Yeah, but is that discrimination against overweight people or is that discrimination, I mean, I don't know whether that's sex discrimination or whether that's weight discrimination, which in Michigan is actionable, but you've got a Tennessee case, so. And I think if you had 90 or 100 women that worked for Dr. Freeman and one of them he didn't like, I'm still, if he preferred that whole rest of the class, I still think that's a sex discrimination basis if he favored them and favored them over male applicants for a job. I mean, that's a tricky puzzle. Yeah. You know, they've argued that it has to be like all women, all women as a class, and I'm thinking, no, if he just personally didn't like a few of them and didn't take the same care of them that he did the rest of them, that's still discrimination. Because women in general were favored. Yes. But some men were promoted, right? So some men were favored, too. Yes, I mean, everything he did wasn't discrimination, but when you have a 26-year employee and he just turns in a job application just trying to better his life, and he's immediately terminated because the female employees go immediately to Dr. Freeman, have this emergency meeting, and he takes care of it that day. He announces that day, I'm going to fire him. And the next business day, he did fire him. Yes. I mean, the timing, a jury's going to look at the timing and say, oh, you did it because he wasn't a team player? That's not even believable. All right. Any further questions? All right. Thank you. Good afternoon. I'm Howard Jackson of the Knoxville Bar representing Cherokee Health Systems. The Ames case recently decided changes the analysis somewhat, but it does not change the outcome. First of all, on the facts of this case, even under Ames, a plaintiff cannot establish a prima facie case. Under the fourth prong of the prima facie case, you either show replaced by someone outside the class or you show a comparator was treated differently. There's no evidence of who he was replaced by, and the only alleged comparator that the plaintiff has pointed to is Dr. Cotry, who engaged in no conduct similar to that of the plaintiff. Well, she did. She applied for the job, too. She applied for the job. I mean, right? Isn't that the reason he was dismissed, because he applied for the same job she applied for? What the plaintiff himself says when asked directly, do you believe you were discriminated against because you're a male, he said, I believe it is because I upset his female preferred person. No allegation that Dr. Cotry did something to upset Dr. Freeman or to cause engender a lack of trust on his part. He had already recommended her for the position. The proper comparator is, did she do something that engendered distrust on his part, as the plaintiff did, and she did not. There's not similar conduct, although facially, yes, they both applied for the job. What do we have to do? So that was Freeman's ostensible reason, because Howard suggested he was not going to apply for the job. But Howard has a different memory of this conversation and never suggested that he wasn't going to apply. So don't we have to take those facts in the light most favorable to the plaintiff in this context? You do, except that when you look on the record here, and we presented the testimony here of Mr. Howard, he agrees that those notes of Dr. Freeman reflect Dr. Freeman's honest belief that Mr. Howard had been untruthful. So on this record, it's undisputed that Dr. Freeman felt that Mr. Howard had been untruthful. We cited that in our brief, and it's in the record, that Mr. Howard agreed at his deposition to those notes and to their accuracy and to, I do understand that Dr. Freeman thought I said something I didn't say. So there's undisputed evidence on the record of Dr. Freeman's mindset and his actual belief that Mr. Howard had been dishonest with him. He also stated in his letter that you've taken actions that are going to create dissension and that we'll have a more harmonious and productive team without you on it. So it goes beyond just the dishonesty, but Dr. Freeman's belief in the dishonesty is there on the record in an undisputed manner. Can I ask you a bit about, you seem to take the position that there was no sex discrimination here because he only favored certain women and not others. And so there was a benefit to only certain women and not others. Do you think, what if it was the opposite context, and a woman is complaining about vigorous sexual harassment in the workplace, and the defendant comes back and defends against that sexual harassment claim with the theory that, well, he didn't harass everybody. He only harassed those he thought were attractive. Do you think that that would not be sex harassment because he didn't harass all women and only harassed a subset? Harassment of any individual female is harassment. So why wouldn't the same logic apply conversely, that even if he benefited one woman, that would be sex discrimination against males? Well, two answers to that. We have the case, the Hubbard v. Evolution Wireless case, and others that we cited in our brief, say that if a supervisor favors a paramour or a protege favors somebody because of their personal interest of whatever kind or nature, that's not sex discrimination, which the district court appropriately cited in this case. The evidence from Mr. Howard is that there were certain females that, whether it was sexual interest or for whatever reason, Dr. Freeman picked out and favored them over everybody, other females and males. In fact, there were a number of females, both by name that we cited in the brief, as well as anyone who happened to be overweight that Dr. Freeman clearly disfavored. So he didn't favor all females. He favored certain females, either sexual attractiveness, romantic interest. Dr. Cautry's case is sort of a protege. And I think that there's a quote from the recent Ames... If you had that case, I mean, just thinking out loud, if you had an employer who would only hire attractive females, you would have a case. Only. It's undisputed on the record that of the six members of the senior management team, all of whom were hired by Dr. Freeman, three of them were male, including the plaintiff, who he hired more than once and promoted to CFO. It's also undisputed on the record that the first person that Dr. Freeman attempted to tap on the shoulder as the next CEO was Joel Hornberger, a male. That's undisputed on the record. And so we don't have that kind of evidence where he only would hire or promote females. He had three male members of the senior management team. Three out of six. Three out of six that he hired and promoted. There's also a quote from the Ames case that I think is... Which case, I'm sorry? Ames. Thank you. Ames case that just came out. It says, discriminatory preference for any group, majority or majority, is precisely and only what Congress has prescribed. And it says, any group. So if you're going to show discrimination against male or female because of gender, it's a group. It's not just certain people you pick out that you like because you think they're attractive or they're your protege or they're your cousin or whatever it may be. There must be evidence of discrimination in favor of females against males as a group. Well, isn't that evidence just required to support the inference that in this particular instance, the individual was favored because of his or her sex? In other words, if there had been no pattern but we had direct evidence that the employer said, I'm promoting you, Ms. Smith, because you are a woman, we wouldn't need any past history of favoring women over men.   Right. So this language you're quoting about being a group is just the evidence that we need to support the inference that this individual was favored because of her sex. Correct? Yes. There has to be some evidence. Just changing the hypo, what if it was direct evidence that it wasn't just, I'm promoting you to CEO because you're a woman? What if it was, I'm promoting you to CEO because you're an attractive woman? Do you think that that would be sex discrimination if a male candidate? Because under Ames and other court precedent, preference for attractiveness discriminates against some women also who this decision-maker deems unattractive. So it's not discrimination against females as a group, it's discrimination against all males and some females, which is not why. How do you distinguish that from my harassment hypo? Because you could use the same logic to say that it's not sex harassment, it's harassment only of a subset of women. I don't understand. I think the same rule has to apply in both situations. Well, I guess when you talk about harassment, that's such a clear form of sex discrimination. But you're not discriminating. I mean, you're allowed to be nasty to everybody equally, right? So if that's the case, then your claim is going to fail. You have to harass based on sex, and you're telling me that it would not qualify as sex harassment if you only target certain women. And that strikes me as somewhat stuck. If you are harassing women based on their sex, that seems pretty clear. If you're making job decisions in favor of some women but not other women, I think that's a different context here, so that you're not necessarily showing discrimination against women as a group, which is what I believe that Ames calls for in other cases. And I think to get back to kind of the facts here in this scenario, that the district court was correct to look at Hubbard and Schubert v. Illinois Department of Transportation on this idea of favoritism, that favoritism towards a paramour, favoritism towards a protege, favoritism towards a personal friend doesn't equal sex discrimination. I think the facts of this case fit that principle well. Well, assume with me that I disagree with you on that point and think it would be, but they have to show that that was the reason for the promotion. What's your response to the argument that there is enough circumstantial evidence here just because of the generic favoritism towards women in the record, or certain women? Why wouldn't that be enough for a reasonable jury to conclude that there was sex discrimination? Well, multiple reasons. First of all, we're at the pretext stage now, I think, that you've got conclusory statements by Ms. Garner. You've got a conclusory statement by Mr. Howard that it's hard for men to get ahead when there's three men sitting at the senior management table, all of whom Dr. Freeman promoted. And then you've got the evidence that there's just no evidence that Dr. Freeman was lying when he stated his reason in his letter for the discharge. There's evidence that people may disagree with it or think it a poor decision, but there's no evidence that he was lying about his conclusion that we're going to be better off without you because you're creating dissension here. But are you saying we can't look behind the reason for his vehement reaction? Of course. But when you look behind it, what's there has to be not just evidence that – first of all, it has to be evidence that he's lying, and secondly, it has to be evidence that he's lying and that the real reason was sex discrimination. And a non-decision maker like Board Member Covington or somebody who had been gone for a long time like Ms. Garner who offered just her impression, the district court, I believe, correctly concluded that this is just conclusory opinion and nothing else, which doesn't get you there on the pretext. And did you – just to clarify, I'll look at Howard's deposition again, but you seem to suggest that Howard himself in his deposition conceded that Freeman's notes were what he believed and it wasn't pretextual notes. So if we looked at what Howard himself admitted, that's what it would say. Yes. Well, he didn't use the word pretext, but he did say that he had – he recognized the handwriting. He had no doubt that they were Dr. Freeman's notes and that he understood – this is almost a direct quote, Dr. Freeman thought I said something I didn't say. That is in his deposition and it's really clear testimony on that point. So there's not evidence that Dr. Freeman was lying and there's certainly not evidence that he was lying and that he was basing his decision on sex as opposed to his personal conclusions about what Mr. Howard's actions had resulted in. All right, just to be clear, if there's clear evidence that he fired him because he defied his preference for the woman and clear evidence that he preferred the woman because she was an attractive woman and he had a preference for attractive women, is that enough and if not, why? First of all, I don't think there's anything in the record to suggest that Dr. Freeman had a romantic interest in Dr. Koshary. There's things in the record about others, but not as to her. And then secondly, I think that would tend to ignore the also undisputed evidence that the first person he tried to tap on the shoulder was a male. Okay, but I'm just saying – let's call it a hypothetical. Yes. Hypothetically, if there was clear evidence that he was fired because he objected to his candidate and clear evidence that he preferred the candidate because she was an attractive woman, is that enough in this hypothetical? If you throw in a hypothetical that there's something about the fact that she's female gave her preference, then yes. But I just don't think we have the facts here on that. Okay, thank you. Thank you. Thank you. Hear your rebuttal? I wanted to clear up one point that one of the board panel members said that, well, Dr. Koshary applied too, didn't she? She didn't even have to apply. They scrapped the succession plan that had been in place for years to look at internal candidates, plural, internal candidates to give them a preference. They scrapped that plan, and after we sent the letter saying, you know, this is sex discrimination, they scrapped that plan and said, you know, we've been doing this wrong. This is – the board of directors chairman sent out an email that said, you know, we just need to go ahead and just look at Dr. Kotri. We've got somebody right here that can do the job and just – so that, you know, the fix was in at that point. She didn't even have to turn in an application. Only Jeff Howard turned in an application. And I want to get to Judge Murphy's point about if – as we talked about a little bit earlier, if this is a mixed motive case, the Supreme Court in the concurring opinion says, you know, really McDonnell Douglas doesn't even apply if it's a mixed motive case. It doesn't even apply. But let's assume it does apply, and we're at the third prong of that. And this court said in Chin in 2009, if you produce evidence from which a reasonable jury could doubt the employer's explanation, that will support the inference of discrimination at trial. So you don't have to go further. You don't have to give direct evidence that, hey, he said he did this because it was a woman. You don't have to go that far. You can probably never go that far. All you have to do is give the jury a reason to doubt their information, and there's plenty of that in this record. I thought there was a good point from your friend on the other side about your client's concession that Freeman believed what he said in his notes. This was – I sat in on those depositions, and he – it's basically a polite way of not calling somebody a liar. He believed that I said something I didn't say or something. But the reason I ask is there is an honest belief rule in the employment context that even if the reason why you were fired didn't have a basis in fact, if the employer honestly believed that it did, that would be enough. And that suggests to me that it might trigger the honest belief rule. That would bring it up. But there's other evidence that Covington talked about. He said, I tried to get Freeman to tell me why he fired Jeff Howard, and he kept giving me these inconsistent answers and wouldn't be truthful. He used the word truthful in his deposition. Wouldn't be truthful with me about that. Shut me off from talking to anybody else about it. Shut me off from talking to Dr. Cautry about this. So he said – and we asked him, then, why do you think he fired Jeff Howard? He said to protect Dr. Cautry and make sure she got the CEO position. And those references are in the record there. So that's all I have. All right. Thank you. Thank you very much. Thanks to both counsel for your helpful arguments. The case will be submitted.